**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Not For Publication

——————————————————————
:
In re                                                          :          Case No. 06-11897 (AJG)
:
MICHAEL ROY BRESSLER                      :          Chapter 7
:
Debtor                               :
——————————————————————x
:
WILLIAM FORREST and SHAWN STEIBEL   :
:          Adv. Pro. No. 06-01908 (AJG)
Plaintiffs,                   :
:
- against -                        :
:
MICHAEL ROY BRESSLER,                       :
:
Defendant                       :
——————————————————————x
:
STEVEN STRUM                                        :
:          Adv. Pro. No. 07-01703 (AJG)
Plaintiff,                    :
:
- against -                        :
:
MICHAEL ROY BRESSLER,                       :
:
Defendant.                    :
——————————————————————x

**OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

A P P E A R A N C E S

MALONEY & LETOWSKY, ESQS.
Attorneys for Plaintiffs William Forrest and Shawn Steibel
60 East 42nd Street, Suite 3403
New York, NY 10165

Paul H. Maloney, Esq.

STEVEN STRUM
*Pro Se* Plaintiff
2155 Paulding Avenue, Apt. 1G
Bronx, NY 10462

MICHAEL BRESSLER
*Pro Se* Debtor
528 E. 85th Street, Apt. 5D
New York, NY 10028

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## Introduction

The Plaintiffs William Forrest ("Forrest") and Shawn Steibel ("Steibel") brought

an adversary proceeding against Debtor Michael Roy Bressler (the "Debtor" or

"Bressler") seeking an exception to and a denial of Bressler's discharge in Chapter 7

pursuant to sections 523 and 727 of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"). Forrest and Steibel have moved for summary judgment against the

Debtor (the "Motion for Summary Judgment"), seeking an order that Bressler is not

entitled to discharge under section 727 of the Bankruptcy Code. Plaintiff Steven Strum

("Strum," together with Forrest and Steibel, the "Plaintiffs")[1] moved to join the Motion

for Summary Judgment on February 6, 2008.

## Jurisdiction

The Court has subject matter jurisdiction over this adversary proceeding pursuant

to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed

by Acting Chief Judge Robert J. Ward dated July 10, 1984. A determination as to the

dischargeability of a debt is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).

---

[1] Strum commenced an adversary proceeding, case number 07-01703-ajg, against the Debtor on April 17,
2007.

## Background

Prior to filing for bankruptcy, Bressler was an attorney licensed and practicing in New York.  He represented Forrest and Steibel together, and Strum, in separate employment discrimination lawsuits.  In their adversary complaint, Forrest and Steibel allege that Bressler committed numerous acts of misconduct during the course of that representation, such as forging a witness's signature to an untruthful affidavit, entering into an illegal fee retainer agreement with them, and damaging their chances of recovery in their suit because of his malfeasance.  Forrest and Steibel sued Bressler for legal malpractice in New York Supreme Court, Bronx County under Index Number 17111/02. Their Request for Judicial Intervention was filed on June 20, 2002.  Presently, that action has not been resolved.  On July 27, 2007, the Court granted Forrest and Steibel's motion for a modification of the automatic stay to allow them to proceed to trial, verdict, and judgment against Bressler in that action.

Bressler also represented Strum in an employment discrimination case.  In March 2002, Strum commenced an action against Bressler in New York Supreme Court, Bronx County, Index Number 2002-14425, alleging, *inter alia*, that Bressler was negligent in handling Strum's case and that Bressler violated New York State Judiciary Law section 487.  The court found for Strum, ruling that Bressler was liable for $930,912.  On October 26, 2004, a judgment for $930,912 was entered in favor of Strum.  Bressler later sought to vacate the judgment, which the Supreme Court denied on January 26, 2006. That court also denied Bressler's motion to reargue the January 26, 2006 decision on July 5, 2006.

On January 6, 2004, Bressler was suspended from practicing law in New York based on his substantial admissions under oath that he had committed professional misconduct and other uncontested evidence of misconduct. *See In re Bressler*, 770 N.Y.S. 2d 303 (1st Dep't 2004). Thereafter, the First Department's Disciplinary Committee moved for an order, pursuant to 22 NYCRR 603.11, accepting Bressler's resignation from the practice of law and striking his name from the roll of attorneys. Bressler acknowledged before the Supreme Court that there were multiple instances of professional misconduct including the neglect of six legal matters entrusted to him, misrepresentations to five separate clients, and failing to deposit client funds into a special account. Bressler acknowledged that he could not successfully defend himself on the merits against these charges. Bressler was thereafter disbarred by the Appellate Division, First Department, on March 23, 2004. *See In re Bressler*, 774 N.Y.S.2d 36 (1st Dep't 2004). In Forrest and Steibel's case, Bressler admitted that he forged a witness's signature to an affidavit, which the witness later disavowed for not being accurate. During the course of Forrest and Steibel's pending legal malpractice suit against him, Bressler has asserted his entitlement to a contingent attorney's fee in their employment discrimination suit.

Bressler filed a voluntary petition (the "Petition") for relief under Chapter 7 of the Bankruptcy Code on August 15, 2006.

Plaintiffs Forrest, Steibel, and Strum were listed in Bressler's Petition as holding unsecured, nonpriority claims. In Schedule I of the Petition, Bressler listed monthly net income of $2,144.01. In Schedule J of the Petition, Bressler listed monthly expenses of $2,427, with $500 listed as a payment for support of additional dependents not living

with Bressler.  Bressler, in sum, listed a monthly net income of negative $283.  In the

Petition, Bressler indicated he had no student loan obligations; on the Statistical

Summary of Certain Liabilities, Bressler wrote "0" in the box marked "Student Loan

Obligations (from Schedule F)."

On August 22, 2006, Bressler filed amended Schedules, A, E, I, and J.  The

amended Schedule J showed an increase in Bressler's monthly expenditures of $195,

while his income remained the same.  In the amended schedules, Bressler again indicated

he had no student loan obligations.  At that point, Bressler's monthly net income was

negative $478.

On September 1, 2006, Bressler filed an amended Schedule F and an amended

Summary of Schedules.  Amended Schedule F listed as an additional creditor, Sprint

PCS, as holding an unsecured nonpriority claim in the amount of $190.

On November 13, 2006, Forrest and Steibel commenced an adversary proceeding

against Bressler, seeking an exception to and denial of discharge pursuant to sections 523

and 727 of the Bankruptcy Code.  In their complaint, Forrest and Steibel sought an

exception to the discharge of a certain debt under sections 523(a)(4) and 523(a)(6) and

denial of discharge under sections 727(a)(2), 727(a)(3), and 727(a)(4).  Strum filed an

adversary proceeding on April 17, 2007.

Bressler filed further amendments to his filings.  On March 12, 2007, Bressler

filed an amendment listing additional creditors with claims dated from 2002 and 2003.  In

addition, the Amended Schedules I and J of March 12, 2007, listed his average monthly

income at $2,840 and his average expenses as $2,829.  Bressler again indicated on the

amended Statistical Summary that he had no student loan obligations.

On September 18, 2007, Bressler filed an amendment listing an additional creditor, Cindy Koumantoros, from 2004, as a judgment creditor with a disputed claim of $4,122.63.

Forrest and Steibel filed the Motion for Summary Judgment under section 727 on January 29, 2008.  Strum filed a motion to join the Motion for Summary Judgment on February 6, 2008.  The docket does not indicate that Bressler filed an opposition.  The Court held a hearing on the Motion for Summary Judgment on February 13, 2007.

At the hearing on February 13, Bressler disclosed for the first time that he also owed student loans.  His explanation for not listing them in his petition or schedules was that he did not think he had to because the loans are non-dischargeable.  The Court does not know how much Bressler owes for student loans and how much he pays per month to service the loans.

After the hearing, Bressler filed a motion for a stay of a decision (the "Motion to Stay") on the Motion for Summary Judgment.  Bressler argued that since the Forrest and Steibel action against him is pending in state court they are not creditors and lack standing to bring an adversarial proceeding.  The Motion to Stay is scheduled to be heard by the Court on March 12, 2008.  However, the issuance of this opinion moots that motion.

### The Plaintiffs' Allegations and Bressler's Responses

Despite only citing sections 727(a)(2), (3), and (4) of the Bankruptcy Code in their complaint, Forrest and Steibel's summary judgment motion seeks a denial or exception to discharge under an additional subsection of 727.  The Motion for Summary Judgment is made pursuant to sections 727(a)(2), (3), (4), and (5).

A. *Allegations Regarding Child Support*

1. The Monthly Payments

The Plaintiffs allege that Bressler does not have financial records or receipts to establish that he pays the stated amount of $600 monthly for child support to a child he fathered with Geraldine Ross ("Ross").[2]  Ross and Bressler assert that (i) the child was born on January 24, 2006, (ii) Bressler is the father, and (iii) they have made an out-of-court agreement for Bressler to pay $600 per month to Ross for child support.[3]  In Bressler's original Schedule J, he listed $500 for payment of support for a dependent.  In his amended Schedule J, filed on August 22, 2006, Bressler increased the amount of this support from $500 to $600.  On that date, Bressler also submitted a Schedule E that claimed that Ross was a creditor holding an unsecured priority claim for a domestic support obligation for $600 a month in child support.  At his deposition, Bressler stated that he pays the child support in cash.  (Bressler Dep., 104:24, Feb 5, 2007.)  At least on one instance he paid $250 to the child's daycare provider for which he received a generic receipt that did not list the name of Bressler or the day care provider.  (*Id*. at 104:35-106:08.)

2. The $4,800 Pre-Petition Transfer to Ross

---

[2]  The Court will not use the child's name, and prohibits any party from listing the child's name in any publicly filed document pursuant to 11 U.S.C. § 112.  The Court notes its frustration with Bressler's inattention to detail.  The directions in Schedule F clearly state "If a minor child is a creditor, indicate that by stating a 'minor child' and do not disclose the child's name."  The Court's Clerk has instructed Bressler to remove references to that child's name in prior filings in the case.

[3]  The Court accepts Ross's statement, but does so with hesitation.  A statement in opposition to summary judgment may properly be considered when it substantially conforms to the formula set forth in 28 U.S.C. § 1746 of being notarized, sworn to be "true and correct," and stated under penalty of perjury.  Ross's statement was not notarized nor sworn to be "true and correct" but it was stated under penalty of perjury.  The Court finds that compliance sufficient under the circumstances of the case.  *See McLaughlin v. Cohen,* 686 F. Supp. 454, 457 (S.D.N.Y. 1988); *Tackman v. Goord*, No. 99-CV-0438A(F), 2005 WL 2347111, at *27 (W.D.N.Y. Sept. 26, 2005).  In the next phase of these proceedings, the Court directs full compliance with relevant procedures and rules.

Bressler's Amended Statement of Financial Affairs filed on August 22, 2006 lists a transfer of $4,800 within 90 days prior to the Petition by Bressler to Ross for "child support." The Plaintiffs allege that Bressler has not documented where the money came from, and allege that the payment was not a child support obligation within the meaning of the schedule but is money arbitrarily or voluntarily made by the Debtor.

Bressler argues that the issue of the transfer of child support monies was not raised in Forrest and Steibel's complaint. Nevertheless, Bressler admits the transfers occurred but argues that all of his child support payments were valid, since child support is a priority under section 507(a)(1)(A), and he is obligated to pay 17% of his gross income under New York's Family Court Act § 413. In his Response to Statement of Material Facts, Bressler states that "this is an obligation that cannot be waived." (Response to Statement of Material Facts, ¶ 23).

B. *Checks Cashed by Ayers*

The Plaintiffs allege that the Debtor's petition does not list numerous transfers and ongoing payments from Bressler to a former paramour, Lila Ayers, indebtedness of Bressler to Ayers, or that Ayers's bank accounts hold the Debtor's assets. The Plaintiffs aver that, as a matter of law, depositing income into the bank account of another has been equated with the intent to defraud creditors and thus is the basis for the denial of discharge under section 727(a)(2). Although it is not entirely clear from their pleadings, it seems that the Plaintiffs also aver that the Debtor has made false sworn statements under section 727(a)(4) in regard to Ayers because the amended schedules do not balance or are not truthful as "there has been no listing of the income and assets deposited into the girlfriend's account." (Plaintiffs' Memo. of Law in Support of the Motion for Summary

Judgment, 4.)  The Plaintiffs show that multiple checks made out to Bressler were endorsed by both Ayers and Bressler and deposited into Ayers's personal checking account within one year prior to the filing of the Petition.

The following transactions occurring within a year of Bressler's Petition were noted:

| Deposit Date | Amount | Payee |
|---|---|---|
| 06/30/06 | $131.46 | O'Neill Staffing Corp. |
| 05/13/06 | $137.45 | Asset Staffing Inc. |
| 04/20/06 | $131.45 | Asset Staffing Inc. |
| 04/12/06 | $1,173.50 | Law Mart Inc. |
| 11/19/05 | $100.00 | Simon B. Gluck, Esq. |

Bressler counters that these "transfers" were listed as his income and were accounted for in Amended Schedule I, filed on March 12, 2007.  Bressler says that his amended schedules accurately reflect his income and assets and the amendments render most of the allegations moot.

C.  *Bressler's Gym Fees*

The Plaintiffs allege that Ayers pays the Debtor's gym fees from her bank account and has been doing so for years.  The Plaintiffs complain that the Debtor's Petition does not list the gym fees as an expenditure, does not list Ayers as a creditor because of the gym fees, and does not show repayments to Ayers for Bressler's past and ongoing gym membership.  Bressler counters that his amended Schedule J lists $140 for "recreation, clubs," and that the omission of gym fees from his original Schedule J was an oversight.  At the deposition, Bressler stated that Ayers paid his gym membership fees and that he reimbursed her in cash.  (Bressler Dep., 96:12-96:25.)  He explained that she pays for the gym because he does not have a bank account.  (*Id.*)  Bressler indicated he was unsure if he listed these transactions in his bankruptcy petition or schedules.  (*Id.* at 97:12-97:17.)

9

He also stated he has no documents showing that he reimburses Ayers for her payment of his gym fees.  (*Id.* at 102:11-102:14.)

D.  *$10,000 Held in Escrow Fees*

The Plaintiffs complain that Bressler's Petition does not list his claim to a $10,000 legal fee for his representation of Forrest and Steibel.  Bressler argues that if the claims of the Plaintiffs are discharged than so is his counterclaim for escrow monies.

E.  *Student Loans*

The Court first learned at the February 13, 2008 hearing that Bressler is also paying student loans, the amount of which is not presently known.  As stated above, Bressler indicated in the Petition and his amended schedules that he had no student loans, and he stated at his depositions that he had no "loans" he was repaying for money borrowed at the time of his petition.  (Bressler Dep., 102:20-102:23.)

F.  *Inadequate Records*

More generally than the above specific allegations, the Plaintiffs allege that Bressler has failed to keep adequate and accurate financial records from which the Debtor's financial condition could be ascertained.

## DISCUSSION

A.  *Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c), incorporated into bankruptcy practice by Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." FED.R.CIV.P. 56(c). "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The creditor seeking an exception to discharge bears the burden of proof in a nondischargeability proceeding to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions from Bankruptcy Code section 523(a). *See In re Fernandez*, Bankruptcy No. 06-20296, Adv. No. 06-2059, 2008 WL 268975, at *3 (Bankr. D. Conn. Jan. 29, 2008) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). "Exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio )*, 91 F.3d 296, 300 (2d Cir. 1996) (citations and quotation marks omitted). "Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions . . . because they most often involve issues of intent, gleaned from invariably disputed facts." *In re Esposito*, 44 B.R. 817, 821 (Bankr. S.D.N.Y. 1984.) As one court recently noted, "few courts" within the Second Circuit "have made a finding of fraudulent intent on the part of a debtor without holding an evidentiary hearing." *In re Wisell*, Bankruptcy No. 04-11269, Adv. No. 05-1044, 2006 WL 723498, at *2 (Bankr. D. Vt. Mar. 20, 2006).

B. *Amendment of Pleadings and Strum's Motion to Join*

Despite only citing sections 727(a)(2), (3), and (4) of the Bankruptcy Code in their complaint, Forrest and Steibel's summary judgment motion seeks a denial or

11

exception to discharge on an additional subsection of 727.  Their motion is made

pursuant to sections 727(a)(2), (3), (4), and (5).  Bressler did not object to the additional

ground under section 727 that was included in the Motion for Summary Judgment.  The

Court will consider the additional ground under Bankruptcy Rule 7015, which applies

Federal Rule of Civil Procedure 15 in adversary proceedings.   Under Bankruptcy Rule

7015 and Rule 15(b)

> When issues not raised by the pleadings are tried by express or implied
> consent of the parties, they shall be treated in all respects as if they had
> been raised in the pleadings.  Such amendment of the pleadings as may
> be necessary to cause them to conform to the evidence and to raise
> these issues may be made upon motion of any party at any time, even
> after judgment.

Rule 15(b) "reflects a liberal policy which favors amendments of pleadings at any

time, unless a party would be prejudiced thereby."  *See In re Bennett Funding Group,*

*Inc.*, 220 B.R. 743, 752 (Bankr. N.D.N.Y. 1997).  The general rule is that although no

formal amendment is made, a court may amend the pleadings merely by entering findings

on the unpleaded issues.  *See id.*  Rule 15(b) applies to summary judgment proceedings.

*See id.*

In his objection, Bressler also complains that the Plaintiffs included more specific

allegations in the Motion for Summary Judgment than were included in the complaint,

specifically noting that the Forrest and Steibel's complaint did not contain objections to

Bressler's alleged failure to include income from temporary work in his schedules, and

the transfer of child support monies to Ross.  The Court finds that the complaint

adequately gave Bressler notice of his failure to "include income from temporary work in

his schedules" as the complaint contained numerous allegations that Bressler was

involved in a fraudulent scheme to have Ayers pay for Bressler's liabilities that were not

listed on Bressler's incomplete schedules. (*See* Forrest and Steibel's Complaint, ¶¶ 44, 45, 50.)   Also, despite what Bressler argues, the complaint also questions the child support payments in sufficient detail to provide Bressler adequate notice of the more detailed allegations contained in the Motion for Summary Judgment. (*See id.*, ¶¶ 51, 52, 53.)

The Court grants Strum's Motion to Join.  The arguments asserted by Forrest and Steibel will apply equally to Strum, whose adversary complaint, like that of Forrest and Steibel's, also objects to the discharge of Bressler under section 727 of the Bankruptcy Code. *See, e.g., Krause v. Buffalo & Erie County Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 363 (W.D.N.Y. 2006).

C. *The Motion to Stay*

By this opinion, the Motion to Stay is moot.  However, even if considered on the merits it would fail for multiple reasons.  Bressler, by his actions in listing Forrest and Steibel as creditors and in litigating the adversary proceeding, is estopped from complaining now that Forrest and Steibel are not creditors and therefore lack standing to sue. *See In re Presto*, 376 B.R. 554, 565 (Bankr. S.D. Tex. 2007).  For example, Forrest and Steibel were listed in the Petition as unsecured creditors and Bressler's Answer[4] does not raise the issue of Forrest and Steibel's standing.  Moreover, Forrest and Steibel satisfy the broad definition of "creditor" under the Bankruptcy Code. *See* 11 U.S.C. § 101(10).

More fundamentally and regardless of the estoppel, since Strum, who undoubtedly has standing as a creditor, has joined Forrest and Steibel's Motion for Summary Judgment, Bressler's Motion to Stay is baseless.  The Court would still need to

---

[4] Doc. No. 4 in Adversary Proceeding No. 06-01908.

consider and rule upon the substantive allegations of the Motion for Summary Judgment

even if Forrest and Steibel were barred from any relief under that motion.

　　　D.  *Exceptions to Discharge*

　　　Section 727 outlines exceptions to a Chapter 7 discharge.  In the Second Circuit,

section 727 is construed liberally in favor of debtors and strictly against creditors

objecting to discharge.  *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d

1300, 1310 (2d Cir. 1996).  *See also In re Palermo*, 370 B.R. 599, 611-12 (Bankr.

S.D.N.Y. 2007) ("Courts construe such exceptions strictly against the objector and

liberally in the debtor's favor").

　　　A central purpose of the Bankruptcy Code and the privilege of discharge is to

allow the "honest but unfortunate debtor" to start anew, free from debt.  *D.A.N. Joint*

*Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006).  "The dual purposes

of a Chapter 7 bankruptcy case are to grant the honest debtor a discharge of his or her

prepetition debts, and to provide a mechanism for the fair and orderly distribution of the

debtor's assets that are subject to administration by the Trustee."  *North River Ins. Co. v.*

*Baskovitz (In re Baskowitz)*, 194 B.R. 839, 843 (Bankr. E.D. Mo. 1996).

　　　"[T]he policy in favor of providing the honest debtor with a fresh start must be

weighed against the countervailing policy of ensuring that dependable information is

available to those interested in the administration of the bankruptcy estate."  *Bank of*

*India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991).  In the interest

of protecting creditors, section 727 requires the denial of discharge under ten enumerated

circumstances.  *See In re Cacioli*, 463 F.3d at 234.  The Plaintiffs' arguments for denying

Bressler's discharge are discussed separately below.

14

1.  Section 727(a)(2)

Section 727(a)(2) states the
    court shall grant the debtor a discharge, unless--
    the debtor, with intent to hinder, delay, or defraud a creditor or an
    officer of the estate charged with custody of property under this title,
    has transferred, removed, destroyed, mutilated, or concealed, or has
    permitted to be transferred, removed, destroyed, mutilated, or
    concealed--
        (A)  property of the debtor, within one year before the date of the
             filing of the petition; or
        (B)  property of the estate, after the date of the filing of the
             petition;
        ….

"The exception to discharge in § 727(a)(2)(A) [or (B)] essentially 'consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor).'" *In re Zembko*, 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (quoting *In re Kontrick*, 295 F.3d 724, 735-37 (7th Cir. 2002)).

"The burden is on the Plaintiff to show that all the elements of § 727(a)(2)(A) are present." *In re Handel*, 266 B.R. 585, 588 (Bankr. S.D.N.Y. 2001).  To prevail under section 727(a)(2)(A), the plaintiff must show that the debtor (1) with intent to hinder, delay, or defraud a creditor (2) transfers, removes, destroys, mutilates, or conceals, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) property of the debtor (4) within one year of the petition date.  *See, e.g., In re Palermo*, 370 B.R. at 612.  The statutory phrase "hinder or delay" has been construed by several courts "to mean that the debtor must have an actual intent to significantly impair a creditor's collection efforts."  *In re Marra*, 308 B.R. 628, 631 (D. Conn. 2004).  Preference of one creditor does not by itself establish the requisite intent, even though a creditor may have been hindered or delayed by the debtor's action.  *See id.* at 630.

15

Fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. See *In re Wong*, 291 B.R. 266, 283 (Bankr. S.D.N.Y. 2003). "These circumstances can be drawn from several badges of fraud, including:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry."

*In re Palermo*, 370 B.R. at 612.

The Plaintiffs have alleged fraudulent transfers from Bressler's "pattern of using his girlfriend's bank account to funnel deposits generated from other financial activities which he has failed to list on his Petition." (Plaintiffs' Memo. of Law in Support of Motion for Summary Judgment, ¶ 3.) Although it is not disputed that transfers of the Debtor's property were made, and made within a year of the Petition under section 727(a)(2), the Court finds that the Plaintiffs have failed to conclusively establish Bressler's fraudulent intent through the circumstantial evidence. Drawing all inferences in Bressler's favor, Bressler has raised issue of facts regarding the payments to Ayers, through the offered explanation that Bressler was paying off old debt and reimbursing Ayers for advancing the fees for his gym membership. The Court concludes that whether Bressler's intent in making the alleged transfers or concealment was to hinder, delay or defraud his creditors presents a genuine issue of material fact best resolved at an evidentiary hearing, precluding summary judgment. The Plaintiffs still retain the burden of establishing Bressler's fraudulent intent.

Furthermore, issues of fact remain concerning whether Bressler fraudulently intended to transfer or conceal property via the purported child support payment of $4,800.  Regarding the evidentiary hearing into that matter, discovery is closed, the time for submitting depositions or affidavits has passed, and live testimony is needed, under Bankruptcy Rule 9017,[5] from Bressler and Ross regarding the support agreement and the details of the payment.

2. Section 727(a)(3)

Section 727(a)(3) permits the court to deny the debtor a discharge if the plaintiff proves that the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained."  11 U.S.C. § 727(a)(3).  To prevail under section 727(a)(3), an objecting creditor must establish that the debtor (1) failed to keep and maintain adequate books and records and that (2) such failure made it impossible to discern the debtor's true financial condition and to identify material transactions.  *See In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y. 2004).  The purpose of Section 727(a)(3) is to provide creditors and the court with "complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requirement to a discharge."  *See In re Palermo*, 370 B.R. at 613 (citations and quotation omitted).

The Plaintiffs, as creditors, have the initial burden "to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained."  *In re Cacioli*, 463 F.3d at 235.  "If the

---

[5]  As discussed below, live testimony will also be required regarding the support obligations for purposes of determining whether a discharge should be denied under sections 727(a)(3) (a failure to keep records) and section 727(a)(5) (loss of assets).

creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *Id.  See also Casa Invs. Co. v. Brenes (In re Brenes),* 261 B.R. 322, 330 (Bankr. D. Conn. 2001) ("Once a plaintiff has established a prima facie case that the debtor concealed, destroyed, or failed to keep material records, the burden of proof shifts to the defendant to furnish credible, rebuttal evidence that such act or failure was justified.").  The record-keeping requirements are determined in a case-by-case basis, *see In re Cacioli*, 463 F.3d at 235, and depend on "the practical problems of what can be expected of the type of person and type of business involved."  *In re Halpern*, 387 F.2d 312, 314 (2d Cir. 1968) (citations omitted).

For purposes of section 727(a)(3), "[t]he Bankruptcy Code does not specifically require a debtor seeking a discharge to maintain a bank account, nor does it require an impeccable system of bookkeeping."  *In re Jacobowitz*, 296 B.R. 666, 670 (Bank. S.D.N.Y. 2003) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992), *aff'd*, 308 B.R. 429 (S.D.N.Y. 2004).  When an objection to discharge founded on section 727(a)(3) is raised, the Court must determine whether a debtor's records are adequate to explain his finances and, if not, whether this failure is justified.  *Id.*  "Intent to defraud is not an element of Section 727(a)(3)."  *In re Palermo*, 370 B.R. at 613.  "Objections to discharge under § 727(a)(3) are not usually decided on summary judgment, as they normally require a fact intensive inquiry regarding the adequacy of the defendant's records."  *Butler v. Liu (In re Liu)*, 288 B.R. 155, 161 (Bankr. N.D. Ga. 2002).

Courts have considered several factors in determining whether to discharge under section 727(a)(3), including:

(1) the complexity and volume of the business;
(2) the amount of the debtor's obligations;
(3) whether the failure to keep records was the debtor's fault;
(4) the debtor's business experience and sophistication;
(5) the customary business practices for record keeping in the debtor's type of business;
(6) the degree of accuracy disclosed by the debtor's existing books and records; and
(7) the extent of any egregious conduct on the debtor's part.

*In re Palermo*, 370 B.R. at 613,

Although it appears that Bressler maintained very few records and even fewer accurate ones, and he admits not getting receipts for such large transactions as rent and childcare, questions of fact remain as to what Bressler concealed or failed to preserve, whether the Plaintiffs could adequately ascertain Bressler's financial condition from Bressler's disclosures, and whether material transactions were concealed. Bressler has countered the allegations regarding the deficiencies in record keeping for his salary and transfers to Ayers' accounts, and, drawing all inferences in his favor, questions of fact remain as to the accuracy of Bressler's disclosures regarding those matters and his justifications for not being more accurate or forthcoming. At the subsequent evidentiary hearing, the Plaintiffs maintain the initial burden to show that the Debtor failed to keep and preserve any books or *material* records from which Bressler's financial condition or business transactions might be ascertained. Bressler should be prepared to furnish credible, rebuttal evidence that any failure was justified.

For the above stated reasons, summary judgment is precluded on the Plaintiffs' denial of discharge claim under section 727(a)(3).

3. Section 727(a)(4)

19

Section 727(a)(4) permits a discharge if the debtor knowingly and fraudulently, in or in connection with the case

> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

The complaint of Forrest and Steibel alleges that discharge should be denied pursuant to section 727(a)(4)(A), (C), and (D).  (Complaint, ¶ 48.)  The complaint alleges false oaths and that Bressler fraudulently withheld from the Chapter 7 Trustee necessary information relating to the Debtor's property or financial affairs.  (Complaint, ¶ 51.)  In their summary judgment motion, however, Forrest and Steibel do not support the allegations under section 727(a)(4)(C) or (D), and consequently the Court will limit its discussion to section 727(a)(4)(A).

Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.  "It is well established that to prove an objection to discharge under § 727(a)(4)(A), the creditor must prove the following by a preponderance of the evidence:  (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case."  *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005).  "A debtor's petition and annexed schedules constitute a statement under oath for purposes of § 727(a)(4)(A)."  *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320

(Bankr. S.D.N.Y. 1994).  "Omissions as well as affirmative misstatements qualify as

false statements for Section 727(a)(4)(A) purposes."  *Republic Credit Corp. v. Boyer* (*In*

*re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Conn. 2007).

"Although the objector to a debtor's discharge bears the ultimate burden of proof,

by a preponderance of the evidence . . . , the objector may present a sufficient prima facie

case on certain aspects of the question to place the burden on the debtor to come forward

with contrary evidence."  *In re Klutchko*, 338 B.R. at 567 (citations omitted).  If the

plaintiffs submit evidence that the oath "reasonably appears" false, "the burden falls upon

the debtor to come forward with evidence to prove that it was not an intentional

misrepresentation.  If the debtor fails to provide such evidence or a credible explanation

for his failure to do so, a court may infer fraudulent intent."  *Carlucci & Legum v.*

*Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (internal quotations and

citations omitted).  *See also Wisell v. Wisell (In re Wisell)*, No. 2:06-cv-167-wks, 2007

WL 2463268, at *2 (D. Vt. Aug. 28, 2007) ("Once the plaintiff meets its initial burden to

produce evidence of a false statement, the burden of production shifts to the debtor to

produce a 'credible explanation.'").

Fraudulent intent must be shown by actual, not constructive fraud, although a

"'reckless indifference to the truth' also suffices."  *In re Klutchko*, 338 B.R. at 567

(citation omitted).  *See also In re Ptasinski*, 290 B.R. 16, 22-23 (Bankr. W.D.N.Y. 2003)

(A court may find intent to deceive in a "reckless disregard of both the serious nature of

the information sought and the necessary attention to detail and accuracy in answering"

but not in mere ignorance or carelessness.) (citing *Diorio v. Kreisler-Borg Constr. Co.*,

407 F.2d 1330 (2d Cir. 1969)).  The requisite intent may be found by inference from all

of the facts.  *See* 6 *Collier on Bankruptcy*, ¶ 727.04[1][a] (15th ed. rev. 2007).  "The party

objecting to the discharge must show that the information was omitted for the specific

purpose of perpetrating a fraud and not simply because the debtor was careless or failed

to understand his attorney's instructions."  *PaineWebber Inc. v. Gollomp* (*In re Gollomp*),

198 B.R. 433, 437 (S.D.N.Y. 1996) (quotation omitted).

Regarding the materiality requirement, a "material matter" is "one bearing a

relationship to the debtor's business transactions or estate or which would lead to the

discovery of assets, business dealings or existence or disposition of property."  *In re*

*Sawyer*, 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991).  "Materiality does not require a

showing that the creditors were prejudiced by the false statement."  *In re Murray*, 249

B.R. at 229 (quoting *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974).  Omitted or

incorrect information may be "material" for purposes of section 727(a)(4)(A) even if the

failure to disclose was not prejudicial to creditors.  *See In re Klutchko*, 338 B.R. at 568.

However, if "the estate would have no interest in property that was omitted from a

schedule, the omission is not material and should not be a ground for denying a

discharge."  6 *Collier on Bankruptcy*, ¶ 727.04[1][b] (15th ed. rev. 2007).  *See also HSBC*

*Bank USA v. Handel (In re Handel)*, 266 B.R. 585, 590 (Bankr. S.D.N.Y. 2001) (stating

"a debtor may . . . make a misstatement and prove that the misstatement caused minimal

harm to the estate.")

The Court's discussion under section 727(a)(2) applies here as well.  The Court

will need to hold an evidentiary hearing to determine whether Bressler had reckless intent

as to whether certain statements were false or known to be false and material.  For

example, Bressler has admitted that he omitted certain information from his original

schedules – such as gym fees, and the $10,000 escrow fees – but, drawing reasonable inferences in Bressler's favor, the Court cannot conclude at the present stage that such omissions are material.  In the subsequent hearing the Plaintiffs will need to establish that Bressler had reckless intent in misstating or omitting the information about the gym fees, escrow fees, or payments to Ayers and that such omissions or omissions were material.  Thus, the Plaintiffs' motion for summary judgment is denied to the extent it seeks a denial of discharge under section 727(a)(4) for Bressler's misstatements as to the payments to Ayers, or Bressler's failure to list his gym fees or the escrow fees.

For the omissions of the student loans, however, the Court finds that Bressler made such omissions with fraudulent intent, as the omissions were knowingly made, made with a reckless disregard of both the serious nature of the information sought, and showed little attention to detail and accuracy.  Bressler's explanation that he did not list the student loans because he felt they are non-dischargeable is not credible.  The forms make no such distinction as to whether the loans are dischargeable; the forms simply demand the information of whether the debtor has student loans so that the Court and creditors can ascertain the debtor's financial condition.  Further, Bressler, as a debtor, is in no position to judge for himself whether or not a debt is a dischargeable and should or should not be included.  Finally, the rest of Bressler's testimony undercuts Bressler's explanation.  For example, Bressler also judged his child support obligations to be non-dischargeable and yet he listed them.

In the subsequent evidentiary hearing, the burden falls upon Bressler to come forward with evidence to show that the omission of his student loans was immaterial.  The omission of student loans could be material given the possible impact on Bressler's

ability to meet his monthly expenses.  In determining whether a discharge should be

denied under Section 727(a)(4)(A), Bressler's credibility at the hearing will also bear on

the Court's decision.  *See, e.g., In re Wisell*, Bankruptcy No. 04-11269, 2006 WL 723498

(Bankr. D. Vt. Mar. 20, 2006) ("after reviewing the jurisprudence . . . within the Second

Circuit, this Court is persuaded that, absent extraordinary circumstances, the factual

determination of whether a debtor's schedules contain fraudulent oaths should not be

made without the Court taking the opportunity to assess the credibility of the defendant

through live testimony").

For the reasons stated above, summary judgment is granted in part as to four of

five necessary elements to deny a discharge under section 727(a)(4) for Bressler's

omission of his student loans.  In summary, the Court finds that (1) Bressler made an

omission under oath; (2) the omission was false; (3) Bressler knew the omission was

false; and (4) Bressler made the omission with fraudulent intent.[6]  Factual issues remain

as to the fifth requisite element – (5) that the omission related materially to the

bankruptcy case – which can be resolved at the subsequent evidentiary hearing.

Summary judgment is thus granted in part and denied in part under section 727(a)(4)

regarding Bressler's omission of his student loans.

4.  Section 727(a)(5)

---

[6] Although there is "considerable overlap between the application of sections 727(a)(4)(A) and 727(a)(2)"
regarding fraudulent intent, *In re Klutchko*, 338 B.R. at 560, the standard for fraudulent intent under section
727(a)(4) differs.  *See New World Restaurant Group, Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 134
(Bankr. E.D.N.Y. 2005) ("Unlike § 727(a)(2)(A), which requires a showing of actual intent to deceive in
order to deny the debtor a discharge, § 727(a)(4 )(A) only requires that the debtor demonstrated a reckless
disregard for the serious nature of the information sought and the necessary attention to detail and accuracy
in preparing the petition or in answering questions in connection with the case.")*; see also Salomon v.
Kaiser (In re Kaiser)*, 722 F.2d 1574, 1584 n.4 (2d Cir. 1983) (citing authority that reckless indifference to
the truth is equivalent to fraud, and that a pattern of reckless and cavalier disregard for truth can supply the
necessary fraudulent intent required by § 727(a)(4)(A)).

Section 727(a)(5) provides that a discharge shall be granted unless "the Debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." "The purpose of Section 727(a)(5) is to prevent the abuse of the bankruptcy process by the debtor 'obfuscating the true nature of the debtor's affairs, and then refusing to provide a credible explanation.'" *In re Palermo*, 370 B.R. at 613 (citation omitted). The section "gives the court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss or disappearance of assets." *Geltzer v. Cohen* (*In re Cohen*), Bankruptcy No. 01-11748 (PCB), Adv. No. 01-03570 (PCB), 2007 WL 710199, at *6 (Bankr. S.D.N.Y. Mar. 6, 2007).

The Plaintiffs bear the initial burden of showing an unexplained loss or deficiency of the Debtor's assets, and then the burden shifts to the Debtor to explain the loss of assets or deficiency. *See In re Unal*, Bankruptcy No. 05-12322, Adv. No. 06-01181 2007 WL 2032928, at *2 (Bankr. S.D.N.Y. July 16, 2007). The Debtor's explanation must be reasonable. *In re Cohen*, 2007 WL 710199 at *6. "[V]ague and indefinite explanations of losses that are based upon estimates, uncorroborated by documentation, are unsatisfactory." *In re Handel*, 266 B.R. at 590.

In the present matter, section 727(a)(5) may preclude discharge following a further evidentiary hearing as to (i) a possible deficiency of assets to meet Bressler's liabilities and (ii) a loss of assets, particularly the $4,800 pre-petition transfer to Ross. Regarding the deficiency of assets to meet liabilities, Bresslers' latest Schedule I of March 12, 2007, states that his average monthly income exceeds his average liabilities by $11. Further, Bressler stated at his deposition that no one helps him with expenses. (*See*

Bressler Dep., 101:23-101:25.)  As has been repeatedly discussed, however, an amended

schedule submitted at the same time as that Schedule I indicates that Bressler had no

student loan obligations, which is now known not to be true.  Thus, if Bressler's student

loan obligations show a deficiency in assets to meet his liabilities, Bressler has the burden

of providing a reasonable explanation as to that gap.

As stated above, material questions of fact exist as the issues of a deficiency of

assets and the loss of assets.  For that reason, entry of summary judgment as to Section

727(a)(5) is precluded.

## CONCLUSION

Based upon the aforementioned, it is ORDERED that

1.  The Motion to Join is granted.

2.  The Motion for Summary Judgment is granted, in part, and denied, in part.

3.  The parties shall appear before the Court on Wednesday, March 19, 2008 at

11:00 for the final pre-trial conference.

Dated:  New York, New York
        March 10, 2008

s/Arthur J. Gonzalez
UNITED STATES BANKRUPTCY JUDGE